## UNITED STATES DISTRICT COURT|
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH BARRETT, on behalf of himself and others similarly situated, | |
| Plaintiff, | |
| v. | Case No. |
| VIVINT SOLAR DEVELOPER, LLC and JOHN DOE CORPORATION D/B/A NATIONAL SOLAR PROGRAM | |
| Defendants. | |

## <u>CLASS ACTION COMPLAINT</u>

### Preliminary Statement

1.      As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2.      Plaintiff Joseph Barrett ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Vivint Solar Developer, LLC commissioned pre-

recorded telemarketing calls to his number on the National Do Not Call Registry and to other putative class members without their prior express written consent.

3.      The calls were sent pursuant to an agreement between Vivint and John Doe Corporation, who identified itself as "National Solar Program" on the call.

4.      The Plaintiff and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, The Plaintiff bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Vivint.

5.      A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6.      Plaintiff Joseph Barrett is a resident of the Commonwealth of Massachusetts and this District.

7.      Defendant Vivint Solar Developer, LLC is a Delaware limited liability company with its principal place of business in Lehi, UT. Vivint Solar Developer, LLC is registered to do business in this District and has a registered agent of CT Corporation System located at 155 Federal St., Suite 700 in Boston, MA 02110.

8.      Defendant John Doe Corporation, who identified itself as "National Solar Program" on the call to Mr. Barrett, is a telemarketing vendor for Vivint and contracted with

Vivint to originate new customers for them through telemarketing, including calls made into this District.

## Jurisdiction & Venue

9.      The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10.     The Court has personal jurisdiction over Vivint Solar Developer and John Doe Corporation because they engaged in telemarketing conduct into this District and Vivint Solar Developer services contracts in this District and is registered to do business in this District.

11.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## TCPA Background

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service or to a number that is charged per call.  *See* 47 U.S.C. § 227(b)(1)(A).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

15.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

17.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## Factual Allegations

<u>Call to Mr. Barrett</u>

18.     Plaintiff Barrett is a "person" as defined by 47 U.S.C. § 153(39).

19.     Mr. Barrett's telephone number, (781) 315-XXXX, is assigned to a cellular telephone service.

20.     Mr. Barrett's telephone number has been on the National Do Not Call Registry for more than a year prior to the call at issue.

21.     On July 16, 2019, Mr. Barrett received a pre-recorded call on his cellular telephone.

22.     The call was made with an ATDS, as that term is defined by the TCPA.

23.     The Plaintiff knew the call were made with an ATDS because:

   a.   The call used a pre-recorded voice;

   b.   The call came from a spoofed caller ID;

   c.   The call was commercial in nature; and

   d.   Right before the call connected with a live individual there was a distinctive "click" sound, associated with an automated dialer.

24.     When Mr. Barrett connected with a live individual, he was informed that he was speaking with the "National Solar Program".

25.     To identify an actual company, Mr. Barrett engaged with the telemarketer.

26.     The telemarketing company set an appointment for Mr. Barrett.

27.     Mr. Barrett then received a confirmation from a representative that said he was calling from Vivint regarding the call from National Solar Program.

28.     To confirm his association with Vivint, Mr. Barrett received an e-mail from "John Stanasek", jstanasek@vivintsolar.com.

29.     Vivintsolar.com is a domain registered and owned by the Defendant.

30.     John Stanasek is a District Solar Manager for Vivint in Wilmington, MA.

31.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because their phone lines was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class. Furthermore, the calls injured Plaintiff because in many cases Plaintiff were charged per minute or per character for the messages sent.

**Vivint Solar Developer's Liability for John Doe's Conduct**

32.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

33.     In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.  *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

34.     In fact, the Federal Communication Commission has instructed that sellers such as Vivint may not avoid liability by outsourcing telemarketing to third parties, such as the co-defendants:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

35.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

36.     The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

37.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

---

[1]     *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

38.     John Doe Corporation is believed to be a Vivint Authorized Dealer.

39.     Vivint hired John Doe Corporation to originate new business knowing that they were using telemarketing calls.

40.     Vivint could have restricted John Doe Corporation from using automated telemarketing, but it did not.

41.     Vivint also accepted the benefits of John Doe Corporation's illegal telemarketing by accepting live transfers of leads directly from John Doe Corporation despite the fact that those leads were generated through illegal telemarketing.

42.     Vivint permitted John Doe Corporation to place calls using Vivint's name as the provider of services without mentioning John Doe Corporation name during the call.

43.     Vivint had absolute control over whether, and under what circumstances, it would accept a customer.

44. Vivint determined the parameters and qualifications for customers to be transferred to a live Vivint representative and required John Doe Corporation to adhere to those requirements.

45. Vivint knew (or reasonably should have known) that John Doe Corporation was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.  Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

46. John Doe Corporation transferred customer information directly to Vivint.  Thus, the company that Vivint hired has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.

47. DSI also had the right to bind Vivint in contract, a hallmark of agency.

48. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**Class Action Allegations**

49.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil

Procedure, Plaintiff bring this action on behalf of a class of all other persons or entities similarly

situated throughout the United States.

50.     The Class of persons Plaintiff propose to represent is tentatively defined as:


All persons within the United States to whom: (a) Defendants and/or a third party
acting on its behalf, made one or more non-emergency telephone calls; (b) to their
cellular telephone number or number that is charged per call; (c) using an automatic
telephone dialing system or an artificial or prerecorded voice; and (d) at any time
in the period that begins four years before the date of the filing of this Complaint to
trial.


51.     Excluded from the Class are counsel, the Defendants, and any entities in which

the Defendant has a controlling interest, the Defendants' agents and employees, any judge to

whom this action is assigned, and any member of such judge's staff and immediate family.

52.     The Class as defined above is identifiable through phone records and phone

number databases.

53.     The potential Class's members likely number at least in the thousands.  Individual

joinder of these persons is impracticable.

54.     Plaintiff Perrong is a member of all of the Class.

55.     Plaintiff is a member of the Class.

56.     There are questions of law and fact common to Plaintiff and to the proposed

Class, including but not limited to the following:

        a.   Whether Defendants violated the TCPA by using automated calls to contact

putative class members cellular telephones;

b.   Whether Defendants' agent(s) initiated calls without obtaining the recipients' prior express invitation or permission for the call;

c.   Whether Vivint Solar is vicariously liable for the telemarketing conduct of its agent(s); and

d.   Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

57.   Plaintiff's claims are typical of the claims of class members.

58.   Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

59.   Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

60.   The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**Legal Claims**

**Count One:**
**Violation of the TCPA's Automated Call provisions**

61.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

62.    The Defendants violated the TCPA by (a) initiating automated telephone solicitations to telephone numbers, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b).

63.    The Defendants' violations were willful and/or knowing.

64.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

**Relief Sought**

WHEREFORE, for himself and all class members, Plaintiff request the following relief:

A.    Injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

B.    Because of Defendants' violations of the TCPA, Plaintiff seek for themselves and the other putative Class members $500 in statutory damages per violation or—where such

regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

      D.      An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

      E.      Such other relief as the Court deems just and proper.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**

Plaintiff,
By Counsel,

Dated: August 3, 2020

/s/ *Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
508.221.1510
E-mail: anthony@paronichlaw.com

Alex M. Washkowitz
CW LAW GROUP, P.C.
188 Oaks Road
Framingham, MA 01702
Telephone: (508) 309-4880
alex@cwlawgrouppc.com

Brian K. Murphy (*subject to pro hac vice*)
Jonathan P. Misny (*subject to pro hac vice*)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
        misny@mmmb.com